STATE OF HAWAII, Plaintiff-Appellant, *v.* ALAN SANFORD DAVIS, et al., Trustees under the Will and of the Estate of James Campbell, Deceased, et al., Defendants-Appellees.

Nos. 5124, 5126, 5127

STATE OF·HAWAII, Plaintiff-Appellant, Cross-Appellee, *v.* AMERICAN SECURITY BANK, et al., Defendants-Appellees, Cross-Appellants.

No. 5125

July 20, 1972

.RICHARDSON, C.J., MARUMOTO, ABE and LEVINSON, JJ., and CIRCUIT JUDGE MENOR in place of KOBAYASHI, J., Disqualified.

OPINION OF THE COURT BY LEVINSON, J.

In 1965, the State of Hawaii commenced four eminent domain proceedings under HRS ch. 101 (then RLH 1955, ch. 8, as amended) against certain parcels of land belonging to the Campbell Estate, for the public purpose of constructing portions of the H-1 Interstate Highway from the Palailai interchange to the Kunia interchange (Civil Nos. 17197 and 17295), Kunia Road (Civil No. 17380), and Farrington Highway from Barber's Point Road to Piliokoe Gulch, at Honouliuli, Ewa, Oahu (Civil No. 17381).[1] Jury verdicts were returned in favor of the defendants, the trustees of the Campbell Estate, for just compensation in the amounts of $52,250, $608,000 (including severance damages of $23,039), $39,000, and $382,717 (including severance damages of $200,000), respectively.[2] In addition, the court allowed the defendants

---

[1]Civil Nos. 17197 and 17295 were consolidated for trial, commencing on August 3, 1970. Trial of Civil No. 17380 commenced on August 10, 1970, and that of 17381 on August 12, 1970.

[2]HRS § 101-23 provides in pertinent part:

In fixing the compensation or damages to be paid for the condemnation of any property, the value of the property sought to be condemned with all improvements thereon shall be assessed . . . . If the property sought to be condemned constitutes only a portion of a larger tract, the damages which will accrue to the portion not sought to be condemned by reason of its severance

as part of just compensation attorneys' fees, expert witness' fees, costs and expenses in the total amount of $120,238.93. This additional allowance was error.

The four proceedings have been consolidated for purposes of appeal. The state of Hawaii, the appellant and cross-appellee herein, argues 1) that the circuit court erred in awarding the defendants attorneys' fees, expert witness' fees, costs and expenses, and 2) that the circuit court erred in permitting testimony relating to the effect of the taking in the event that the defendants should elect to develop certain remainder lands for their highest and best use. The defendant trustees, the appellees and cross-appellants herein, urge that the circuit court erred in refusing to admit testimony relating to severance damages which the defendants would allegedly suffer contingent upon certain possible future economic conditions.

### I. THE APPEAL OF THE STATE OF HAWAII

#### A. *Attorneys' Fees, Expert Witnesses' Fees, Costs, and Expenses in Eminent Domain Proceedings*

As a general rule, attorneys' fees are not taxable against the losing party in the absence of statutory authorization or agreement of the parties. *Brown v. Tokuda*, 49 Haw. 311, 312, 417 P.2d 636, 637 (1966). This rule has been followed in denying attorneys' fees in condemnation cases in other states. *Housing Authority of the City of Long Branch v. Valentino*, 47 N.J. 265, 268, 220 A.2d 196, 198 (1966); *Frost v. Cedar County Board of Supervisors*, 163 N.W.2d 432, 434 (Iowa 1968); *9.88 Acres of Land v. State*, 274 A.2d 139, 140 (Del. 1971); *City of Buffalo v. J. W. Clement Company*, 28

---

from the portion sought to be condemned . . . shall also be assessed . . . .
    HRS § 101-24 provides in pertinent part:
    For the purpose of assessing compensation and damages, the right thereto shall be deemed to have accrued at the date of summons, and, . . . its actual value at that date shall be the measure of valuation of all property to be condemned, and the basis of damage to property by reason of its severance from the portion sought to be condemned, subject, however, to section 101-23.

N.Y.2d 241, 262-63, 269 N.E.2d 895, 908, 321 N.Y.S.2d 345, 364 (1971); *Bowers v. Fulton County,* 227 Ga. 814, 815, 183 S.E.2d 347, 348 (1971). The eminent domain law, HRS ch. 101, is devoid of any grant of authority to require payment of attorneys' fees or costs except under HRS § 101-27,[3] which provides that defendants in condemnation actions shall be entitled to recover litigation costs and attorneys' fees in the event that eminent domain proceedings are abandoned or discontinued or the property not finally taken for public use. This appears to manifest a legislative intent to preclude such recovery if the property concerned is finally taken for public use. *See County of Los Angeles v. Ortiz,* 6 Cal. 3d 141, 490 P.2d 1142, 1144, 98 Cal. Rptr. 454, 456 (1971).

The defendants argue, however, that HRS § 607-24, which provides in pertinent part that "[i]n all cases in which a final judgment or decree is obtained against the State . . ., any and all deposits for costs made by the prevailing party shall be returned to him, and he shall be reimbursed by the State . . . all actual disbursements, not including attorney's fees or commissions, made by him and approved by the court", entitles them at least to an award of costs

---

[3]HRS § 101-27 provides in pertinent part:

Whenever any proceedings instituted under this part are abandoned or discontinued before reaching a final judgment, or if, for any cause, the property concerned is not finally taken for public use, a defendant who would have been entitled to compensation or damages had the property been finally taken, shall be entitled, in such proceedings, to recover from the plaintiff all such damage as may have been sustained by him by reason of the bringing of the proceedings and the possession by the plaintiff of the property concerned if the possession has been awarded including his costs of court, a reasonable amount to cover attorney's fees paid by him in connection therewith, and other reasonable expenses; and the possession of the property concerned shall be restored to the defendant entitled thereto . . . . In the event judgment is entered in favor of the defendant and against the plaintiff, any moneys which have been paid, and any additional security which has been furnished, by the plaintiff to the clerk of the court . . . shall be applied or enforced toward the satisfaction of the judgment. In the case of the State or a county, if the moneys so paid to the clerk of the court are insufficient, then the balance of such judgment shall be paid from any moneys available or appropriated for the acquisition of the property concerned, or if that is insufficient then the same shall be paid from the general fund of the State . . . .

and expenses, including expert witness' fees.

We are unable to agree. Under HRS § 607-24, one is not a "prevailing party" unless he obtains a final judgment against the state. It is clear from HRS § 101-27, however, that judgment in an eminent domain proceeding is not to be deemed "in favor of the defendant and against the plaintiff" unless the property sought to be condemned is not finally taken for public use.[4] Therefore, when the state is successful in condemning the property in question, the condemnee cannot be considered the "prevailing party" and cannot recover for "all actual disbursements . . . approved by the court" under HRS § 607-24.

Nevertheless, the defendants urge that attorneys' fees, expert witness' fees, costs and expenses should be included within the measure of "just compensation" under the United States and Hawaii Constitutions,[5] independent of any express statutory authorization.[6] In *Hawaii Housing Authority v. Rodrigues*, 43. Haw. 195, 197 (1959), this court adopted the measure of compensation for land taken by the power of eminent domain contained in 4 Nichols, *Eminent Domain* §§ 12.2 and 12.2[1] (3d ed.):

> "It is well settled that, when a parcel of land is taken for public use by the exercise of the power of eminent domain, the measure of compensation is the fair market value of the land. [Citation omitted.]

---

[4]See HRS § 101-27, *supra* note 3.

[5]The fifth amendment of the United States Constitution provides in pertinent part:

> . . . nor shall private property be taken for public use, without just compensation.

In 1965, Article I, section 18 of the Hawaii Constitution provided:

> Private property shall not be taken for public use without just compensation.

[6]The United States Supreme Court, in Dohany v. Rogers, 281 U.S. 362, 368 (1930), declared otherwise with respect to the fifth amendment of the United States Constitution:

> Attorneys' fees and expenses are not embraced within just compensation for land taken by eminent domain.

"By fair market value is meant the amount of money which a purchaser willing but not obliged to buy the property would pay to an owner willing but not obliged to sell it, taking into consideration all uses to which the land was adapted and might in reason be applied. [Citations omitted.]"

This definition of "just compensation" contains no reference to attorneys' fees or litigation costs.

We hold in accordance with the overwhelming weight of authority that attorneys' fees and expenses, including expert witness' fees, are not embraced within the meaning of "just compensation" for purposes of article I, section 18 of the Hawaii Constitution, *Dohany v. Rogers*, 281 U.S. 362, 368 (1930); *City of Muskegon v. Slater*, 379 Mich. 466, 470-71, 152 N.W.2d 652, 654 (1967); *Leadville Water Company v. Parkville Water District*, 164 Colo. 362, 365-66, 436 P.2d 659, 660 (1967); *Lamar v. Urban Renewal Agency of City of Reno*, 84 Nev. 580, 581, 445 P.2d 869, 870 (1968); *9.88 Acres of Land v. State, supra*, 274 A.2d at 140; *Bowers v. Fulton County, supra*, 227 Ga. at 815, 183 S.E.2d at 348; *County of Los Angeles v. Ortiz, supra*, 6 Cal. 3d at 148, 490 P.2d at 1147, 98 Cal. Rptr. at 459; 4A Nichols, *Eminent Domain*, §§ 14.249[3] and 14.249[4] (3d ed. 1971). *Contra, Dade County v. Brigham*, 47 So. 2d 602, 604-05 (Fla. 1950). In so holding, we adopt the reasoning of the Supreme Court of Delaware in *9.88 Acres of Land v. State, supra*, 274 A.2d at 140:

The argument is that the owner is deprived of "just compensation" when it must expend a substantial portion of the award, founded upon fair market value of the property, for the necessary services of counsel and experts; and this is especially so, says the owner, when the final offer of the condemnor is greatly less than the value ultimately established.

The argument appeals to the sense of fairness, but it has no tenable basis in constitutional law. . . .

. . . . [A]uthorities propound the rationale of fairness that may motivate legislative relief in this area; but they

cast no doubt upon the force and effect of the general rule of constitutional law we here endorse: in the absence of statute, there is no right to counsel fees [and litigation costs] in condemnation cases, and the deprivation of such fees does not violate any constitutional right.

If an adjustment in the law of eminent domain is dictated by fairness in this connection, it is a matter for consideration and action by the [legislature].

## B. *Cost of Developing Remainder Lands for Highest and Best Use*

In Civil No. 17381, Don R. Cowell, the defendants' expert real estate consultant and appraiser, testified that as of August 13, 1965, the date of the taking, the highest and best use of a portion of the Campbell Estate lands situated along the Farrington Highway would be as a subdivision of one-acre farm lots. He further testified that as a result of the taking the remainder property had suffered severance damages in the amount of $255,170, attributable to loss of access to Farrington Highway and the water main running along it and to the unavailability for highest and best use of that remainder land on which a replacement access road would have to be built. These development costs, made necessary by the taking, would have the effect of depressing the market value of the tract as a whole, because "[o]bviously, a purchaser buying this acreage to develop it to one-acre farm lots cannot afford to pay as much if he's got to install a road to serve his lots, as when if he had subdivided it right off the highway." Cowell testified that 94% of his severance damage estimate reflected the cost of constructing an access road, a figure which he obtained from an engineer, who was neither identified nor called upon to testify.

Counsel for the state objected to the above line of questioning on the grounds that it called for the use of inadmissible hearsay and that it required implementation of the "subdivision approach" to severance damages, which this court disapproved in *Hawaii Housing Authority v. Rodrigues,*

*supra.* The circuit court permitted the testimony and denied the state's subsequent motion to strike.

Whatever its other defects, Cowell's testimony did not run afoul of the *Rodrigues* case. In arriving at a measure of severance damage, he merely testified concerning the effect of the taking upon the market value of the remainder property for its highest and best use. In *Rodrigues, supra,* 43 Haw. at 198, we quoted with approval from *State v. Tedesco,* 4 Utah 2d 248, 291 P.2d 1028 (1956) as follows:

> "The test is not what the lots will bring when and if . . . willing buyers [for each] come along, but what the tract, as a unit, and as is, platted or not, and in whatever state of completion, will bring from a willing buyer of the whole tract."

In *State v. Chang,* 50 Haw. 195, 436 P.2d 3 (1967), we permitted evidence of a condemnee's development costs to show enhancement of fair market value. There is no reason why we should not permit the use of such testimony to show diminution of fair market value. The fact that the development costs have not yet been incurred and that the subdivision has not been begun are immaterial, since "[m]arket value is not limited to the value for the use to which the land is actually devoted, but it may have a *potential* use value." *Hawaii Housing Authority v. Rodrigues, supra* at 197 (emphasis added).

The fact, however, that the defendants could properly introduce evidence relating to potential development costs is not dispositive of the state's claim that the circuit court erroneously permitted Cowell to rely upon the hearsay opinion of an anonymous engineer for 94% of his own opinion concerning severance damages. It is true that " 'witnesses having the necessary qualifications may give their opinions as to the value of property' " and that the extent of such a witness' knowledge goes to the wei⸱⸱h ⸱⸱ b⸱⸱ given such testimony rather than its adm bil⸱⸱ . ⸱ ⸱ritory v. Adelmeyer, 45 Haw. 144, 148, 363 P.2d 979, 982-83 (1961); *State v. Heirs of Halemano Kapahi,* 4⸱ Haw. 101, 114, 395 P.2d 932, 940 (1964). An expert witn ss may not, however, serve

as a mere conduit for the hearsay opinion, the factual basis of which is not established through evidence, of another expert who does not testify when the expert who does testify lacks the requisite qualifications to render the opinion in his own right. *State v. Wineberg*, 74 Wash. 2d 372, 383-84, 444 P.2d 787, 794 (1968); *Dennis v. Prisock*, 221 So. 2d 706, 711 (Miss. 1969); *Arkansas State Highway Commission v. Mahan*, 249 Ark. 1022, 1023-25, 463 S.W.2d 98, 99-100 (1971).[7] To permit Cowell to rely on an engineer's hearsay opinion as to the cost of constructing an access road would violate the rule that an expert's opinion cannot be elicited to supply the substantive facts necessary to support the conclusion. *Hubbard v. Quality Oil Company of Statesville, Inc.*, 268 N.C. 489, 494, 151 S.E.2d 71, 76 (1966); *Butcher v. Main*, 426 S.W.2d 356, 359 (Mo. 1968).[8] We therefore hold that it was error to permit Cowell's testimony over the state's objection.

## II. THE CONDEMNEES' CROSS-APPEAL

As a result of the taking which was the subject of Civil No. 17295, there was a loss of free and unrestricted access from one portion of the defendants' remainder agricultural land to another. On one side of the H-1 Freeway, the defen-

---

[7]Taylor v. B. Heller and Company, 364 F.2d 608, 613 (6th Cir. 1966) and 6816.5 Acres of Land v. United States, 411 F.2d 834, 839-40 (10th Cir. 1969), purport to establish the broader principle that "expert opinion may not be based upon the opinion of others, either in evidence or not in evidence," although in each case the hearsay opinion relied upon was that of an unidentified individual who did not testify.

[8]A completely different situation would be presented, if, as in Dash v. State, 491 P.2d 1069, 1071-72 (Alaska 1971), the appraiser had sought to rely in part upon the *testimony* of an expert engineer qualified to express an opinion regarding development costs. In that event the facts relating to development costs, having been independently established, could properly serve as the basis of the expert's opinion. City & County of Honolulu v. Bishop Trust Company, 48 Haw. 444, 461, 404 P.2d 373, 384 (1965).

Equally distinguishable is an expert appraiser's reference to the sale price of comparable property in the formulation of his own opinion regarding the value of the land taken, since the appraiser would be qualified to evaluate in his own right the reliability of the data employed.

dants had leased lands to the Oahu Sugar Company; on the other side the lessee was the Ewa Plantation. Each lessee hauled its sugar cane to a refinery on its side of the H-1. The state built a series of underpasses connecting the two portions of the defendants' remainder agricultural lands.

The defendants sought to establish as evidence of severance damages the facts that future economic conditions would require the consolidation of the two separate sugar operations, that all sugar cane subsequently produced would have to be hauled to a single refinery, and that the existing underpasses connecting the parcels on each side of the H-1 Freeway would be inadequate to permit free passage of the vehicles needed to haul the sugar cane.

The circuit court properly excluded this evidence. "The mere fear of contingent injury which may never occur, and the happening of which is speculative and uncertain, is not a showing of damage." *Waukegan Park District.v. First National Bank of Lake Forest*, 22 Ill. 2d 238, 246, 174 N.E.2d 824, 829 (1961). *See also Territory v. Honolulu Plantation Company, Ltd.*, 34 Haw. 859, 868 (1939); *Thomsen v. State*, 284 Minn. 468, 472, 170 N.W.2d 575, 579 (1969); *City of Los Angeles v. Geiger*, 94 Cal. App. 2d 180, 190-91, 210 P.2d 717, 724 (1949).

Civil Nos. 17197, 17295, 17380, and 17381 are reversed because of the improper allowance of attorneys' fees, expert witness' fees, costs and expenses.

Civil No. 17381 is further remanded for a new trial on the issue of severance damages.

*Johnson Wong* and *Warren H. Higa*, Deputy Attorneys General (*George Pai*, Attorney General, and *Richard Y. C. Au*, Deputy Attorney General, on the briefs) for plaintiff-appellant and cross-appellee.

*Charles B. Dwight, III* (*Ashford & Wriston* of counsel) for defendants-appellees and cross-appellants.